IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ANTANETTE P.,

        **Plaintiff,**

  v.                                      Civil Action 3:25-cv-00056
                                            Judge Thomas M. Rose
                                            Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Antanette P., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.**      **BACKGROUND**

Plaintiff filed applications for DIB and SSI, alleging disability beginning on June 14, 2022, due to: "COPD, obes[ity], diabetes, sleep apnea, congestive heart failure." (R. at 251–52, 253–59, 355). After her applications were denied initially and on reconsideration, Administrative Law Judge Edward Studzinski (the "ALJ") heard the matter on October 4, 2023. (R. at 36–77). Ultimately, he denied Plaintiff's applications in a written decision. (R. at 16–35). The Appeals Council then denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. at 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on February 25, 2025, (Doc. 1). The Commissioner filed the administrative record and responded to Plaintiff's arguments (Docs. 7, 9). The matter is ripe for review. (*See* Docs. 8, 9, 10).

### A. Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's hearing testimony:

> [Plaintiff] testified that she experienced shortness of breath upon minimal exertion. She uses breathing inhalers regularly. She also experienced cramping in her hands and feet in addition to urinary frequently and dizziness due to diuretics.

(R. at 23).

> ***[Plaintiff] did not allege a mental health impairment and she has not received any treatment. She cares for her six- and seven-year-old children. She graduated high school and completed certification in cosmetology.
>
> ***[Plaintiff] reports she is still able to; take medication, drive, attend to her personal care on a regular basis, cook for herself or others, wash dishes, do laundry, wipe down tables, sweep, mop, socialize with friends or family regularly, pay bills, handle finances and shop for about an hour at grocery with kids, good with written/spoken instructions.

(R. at 25).

### B. Relevant Medical Evidence

The ALJ summarized Plaintiff's medical treatment and records as follows:

> [Plaintiff] has a history of emergency room presentations related to chest pain and shortness of breath from March 27, 2022 through June 2022. She had previously been treated for congestive heart failure and had an ICD placed in 2021 (Exhibit 1F, p.5). However, treatment records noted no acute pulmonary embolus. Oxygen saturation was 100%. In June 2022, [Plaintiff]'s legs were extremely swollen and she was only able to walk five steps. Her BMI was 53. Echocardiogram revealed recurrent LVEF of 20% (Exhibits 1F-3F, 5F, & 8F). She was also diagnosed with asthma and was using an albuterol inhaler twice a day. [Plaintiff] alleges she became disabled in June 2022.
>
> On September 9, 2022, [Plaintiff] was examined by Amita Oza, M.D. and was noted to have a history of hypertension, diabetes, cardiomyopathy with congestive heart failure with ICD placement, asthma, and obstructive sleep apnea. However, physical examination was largely unremarkable with normal range of motion

2

> except for the lumbar spine due to her body habitus, normal gait without ambulatory aids, and 2+ reflexes (Exhibit 7F). Medical records do not support a finding that [Plaintiff] was unable to work in the months following June 2022.
>
> [Plaintiff] was admitted to the hospital for several day[s] in January 2023 for acute CHF and asthma exacerbation (Exhibit 11F). However, her condition improved with medication and on January 24, 2023, Megan Miller, D.O. opined that [Plaintiff] was able to return to work on January 25, 2023, but was restricted from having to walk long distances (Exhibit 10F). ***
>
> [Plaintiff] did well after January 2023 with little follow up treatment (Exhibit 19F). She subsequently complained of increased back pain in March 2023. She was having difficulty with prolonged standing and walking. [Plaintiff] started physical therapy to help with weight loss.
>
> She was also working out at the gym twice a week, walking on the track, riding a stationary bike, and using a leg press machine (Exhibit 14F, p.29). In May 2023, it was noted that [Plaintiff] continued working out twice a week in addition to physical therapy (Exhibit 15F, p.22).
>
> By May 2023, [Plaintiff] was back to work twenty hours a week at a desk job (Exhibit 19F, p.50). As noted above, her earnings indicated that she was performing substantial gainful activity in July. On August 21, 2023, [Plaintiff] reported walking around a cultural festival without difficulty (Exhibit 19F, p.19).
>
> On September 6, 2023, [Plaintiff] denied any acute health concerns. She reported persistent shortness of breath upon exertion, such as walking, and edema in her legs with prolonged sitting. However, physical examination was unremarkable (Exhibit 18F, p.5). It was also noted that her type 2 diabetes was controlled and without complication (Exhibit 18F, p.9).
>
> [Plaintiff] received emergency room treatment on October 2, 2023 due to asthma exacerbation (Exhibit 22F). She was treated and discharged the same day. Bradley Hoops, APRN opined that she was able to return to work on October 3, 2023 (Exhibit 20F).

(R. at 23–24).

### C. The ALJ's Decision

The ALJ found that Plaintiff had engaged in substantial gainful activity since July 2023, but there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. (R. at 22). The remaining findings address the period Plaintiff did

3

not engage in substantial gainful activity. (*Id.*). The ALJ determined that Plaintiff has the following severe impairments: heart failure; apnea; diabetes mellitus; and obesity. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. She is able to stand and/or walk for a total of about 4 out of 8 hours. She is able to sit for a total of about 6 out of 8 hours. [Plaintiff] needs to alternate her position between sitting, standing, and walking for no more than five minutes out of every hour. While doing so, she would not need to be off task. [Plaintiff] can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch and crawl, but she can never climb ladders, ropes or scaffolds. [Plaintiff] can perform fine and gross manipulation frequently but not constantly, and is incapable of forceful grasping or torquing. She can operate foot controls frequently but not constantly. [Plaintiff] should avoid concentrated exposure to extreme heat or cold, or to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. [Plaintiff] is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and she should avoid concentrated exposure to unguarded hazardous machinery.

(R. at 23).

Relying on the vocational expert's ("VE") testimony, the ALJ found that Plaintiff is unable to perform her past relevant work as a fast-food worker, packager, or direct support worker. (R. at 26). Further relying on the VE's testimony, the ALJ found that, in consideration of her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform such as an order caller, office helper, and small products assembler. (R. at 27). Thus, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 14, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))." (*Id.*).

4

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff first suggests that the ALJ's bias during her disability hearing requires remand and assignment to a different ALJ. (Doc. 8 at 6–7). Plaintiff separately argues that the ALJ erred in his analysis of the medical source opinions of Jennifer Jordan, APRN ("Nurse Jordan"). (*Id.* at 7–15). The Commissioner disagrees on both fronts. (Doc. 9 at 5–11).

### A. ALJ Bias

In her first assignment of error, Plaintiff argues that the ALJ failed to conduct the disability hearing proceedings in a non-adversarial manner, leading to the appearance of bias. (Doc. 8 at 6). Specifically, she alleges that the ALJ "exhibited a very adversarial tone, which projects the appearance of bias to a layperson" and that she felt the ALJ was "rude, very degrading" and

5

interruptive. (*Id.* (quoting R. at 427 (Plaintiff's letter to Appeals Council alleging ALJ bias))). The Undersigned is unpersuaded.

This Court must "presum[e] that policymakers with decision making power exercise their power with honesty and integrity." *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 363 (6th Cir. 2004) (quoting *Navistar Int'l. Transportation Corp. v. U.S. E.P.A.*, 941 F.2d 1339, 1360 (6th Cir. 1991)). Consequently, the party asserting bias or partiality bears the burden to show "convincing evidence" that there is an actual risk of bias or prejudgment. *Id.* Convincing evidence of bias or partiality must be based on the record, not mere speculation, and "supported by a '*strong showing*' of bad faith." *White v. Comm'r of Soc. Sec.*, No. 2:18-cv-12487, 2019 WL 2407994, at *6 (E.D. Mich. Mar. 8, 2019) (quoting *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436 (6th Cir. 2010)) (emphasis in original), *report and recommendation adopted*, 2019 WL 2183128 (E.D. Mich. May 21, 2019). Moreover, "expressions of impatience, dissatisfaction, annoyance, and even anger" are generally insufficient to show bias or impartiality. *Id.* at *6 (quoting *Liteky v. United States*, 510 U.S. 540, 555–556 (1994)).

Here, Plaintiff asserts that the ALJ was "very adversarial" and used a "hostile tone." (*See* Doc. 8 at 6; Doc. 10 at 2). Plaintiff does not provide specific record support; instead, she concedes that the ALJ's "tone" is not reflected in the transcript. (Doc. 10 at 2); *White*, 2019 WL 2407994, at *6 ("The party asserting bias" is required to present "convincing evidence, based on the record and not speculation, that a risk of bias or prejudgment exists."). But even to the extent the ALJ's tone could be ascertained from the transcripts, "judicial remarks during the course of a trial that are critical or disapproving, or even hostile to, [counsel], the parties or their cases, ordinarily do not support a bias or partiality challenge." *See Liteky v. United States*, 510 U.S. at 555–56; *see also Morris v. Comm'r of Soc. Sec.*, No. 2:17-CV-623, 2018 WL 1940253, at *12 (S.D. Ohio Apr.

6

25, 2018) (overruling Plaintiff's claim that the ALJ's tone evidenced bias), *report and recommendation adopted*, No. 2:17-CV-623, 2018 WL 2871858 (S.D. Ohio June 11, 2018). Accordingly, Plaintiff's allegations about the ALJ's tone are not supportive of bias.

Plaintiff also claims—through reference to her written narrative submitted to the Appeals Council—that the ALJ frequently interrupted her and did not give her time to answer questions. (Doc. 8 at 6 (citing R. at 427); Doc. 10 at 2 (citing R. at 427)). Upon review, it is clear that the ALJ's interjections were not inappropriate, nor does the record demonstrate that Plaintiff was unable to answer questions. For instance, when Plaintiff's counsel accidentally misstated the year Plaintiff stopped working, the ALJ interrupted to correct the record before instructing counsel to "please continue" asking Plaintiff questions. (R. at 55–56 ("Excuse me. I assume you misspoke, you said '23 where as . . . ")). The Undersigned reads this interruption as the ALJ seeking to understand the nature and timing of Plaintiff's work history. Other portions of the record confirm this reading as well. (*See, e.g.*, R. at 51–52 (asking Plaintiff's counsel not to assume the ALJ knows what terms like "Green Tokai" mean when Plaintiff testifies about them)). Seeking clarification does not amount to bias. *Morris*, 2018 WL 1940253, at *12 ("[T]he ALJ has the right to probe the consistency of Plaintiff's allegations and to compare those allegations to evidence of record."). Finally, and most important, the Undersigned has reviewed the entire hearing transcript as well as the ALJ's decision in this case and finds no evidence of bias.

    **B.**    **Evaluation of Medical Source Opinions**

Plaintiff argues the ALJ failed to evaluate the supportability of the opinion drafted by Jennifer Jordan, ARPN. (Doc. 8 at 9). The Undersigned is unpersuaded.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x

149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)). And an ALJ is not required to adopt a medical opinion verbatim. *See, e.g.*, *Poe*, 342 F. App'x at 157 ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5). Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). At base, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20–CV–1001, 2021 WL 1877173, at *11 (N.D.

Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021).  And the Court must affirm if substantial evidence supports the ALJ's decision, even if the Undersigned would have resolved conflicts in the record differently.  *See Christine G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-1969, 2023 WL 5717417, at *6 (S.D. Ohio Sept. 5, 2023).

Here, Nurse Jordan completed a Medical Assessment of Ability to do Work-Related Activities (Physical) form for Plaintiff on September 7, 2023, (R. at 1784–88).  She opined that Plaintiff was unable to perform even a substantially reduced range of sedentary work due to heart failure and asthma with fatigue, shortness of breath, and swelling of the legs.  (R. at 1784, 1786, 1788).  She further opined that Plaintiff was capable of sitting no more than four hours in an eight-hour workday and would be absent from work more than three times a month.  (R. at 1786).

The ALJ found Nurse Jordan's assessment "not persuasive because the evidence does not establish the degree of [l]imitation she found.  [Plaintiff] received limited treatment for heart failure and asthma.  Her condition was largely stable, and she was working out several times per week in an effort to lose weight." (R. at 25).  The ALJ's opinion, read holistically, demonstrates that he made a sufficient supportability analysis for Nurse Jordan's opinion.  *See Perkins v. Comm'r of Soc. Sec.*, No. 1:20-CV-554, 2021 WL 3722772, at *7 (S.D. Ohio Aug. 23, 2021) ("Reading the opinion as a whole, the ALJ fairly described the lack of supportability. . .for Ms. Smith's opinions. . .").  Supportability is two-fold, requiring the ALJ to evaluate how much the medical conclusions are supported internally, as well as by other treatment notes and exams by the opining medical provider.  20 CFR 404 § 1520c(c)(1); *Michael R. v. Comm'r of Soc. Sec.*, No. 2:22-CV-4117, 2023 WL 6160626, at *5 (S.D. Ohio Sept. 21, 2023) ("The ALJ properly evaluated the supportability of Ms. Riffle's opinion given the lack of objective evidence in the opinion itself

9

and when compared to Ms. Riffle's past treatment notes."), *report and recommendation adopted*, No. 2:22-CV-4117 WL 688754 (S.D. Ohio Feb. 20, 2024); *see also Thomas J. v. Comm'r of Soc. Sec.*, No. 1:24-CV-00048, 2024 WL 3841221, at *10 (S.D. Ohio Aug. 15, 2024). This is what the ALJ did.

The ALJ first discussed Nurse Jordan's prior examinations and treatment notes. (R. at 24 (citing R. at 1793, 1796)). Specifically, he referred to Nurse Jordan's examination dated one day before she wrote her medical source opinion. (*Id.* (citing R. at 1793)). That examination, the ALJ noted, contained Plaintiff's reports of shortness of breath upon exertion and swelling in her legs with prolonged sitting. (*Id.*). But the ALJ pointed out that the notes also contained "unremarkable" findings. (R. at 24 (citing R. at 1796)). Upon review of the record, these findings included a normal heart rate, rhythm, sounds, and normal range of motion. (R. at 1796). The findings also indicated Nurse Jordan treated Plaintiff's congestive heart failure with potassium chloride. (R. at 1797). The ALJ also mentioned Nurse Jordan's notes from the same exam that show Plaintiff's "type 2 diabetes was controlled and without complication." (R. at 24 (citing R. at 1797)).

The ALJ then made reference to these exams to reach his conclusion that "the opinion of Jennifer Jordan is not persuasive because the evidence does not establish the degree of [l]imitation she found." (R. at 25). In particular, the ALJ noted that Nurse Jordan's proposed limitations were based upon findings of "heart failure, shortness of breath, and swelling of the legs." (R. at 24 (citing R. at 1784)). He then contrasted these findings with mention of Plaintiff's "limited treatment for her heart failure and asthma." (R. at 25 (citing R. at 1796)). In doing so, the ALJ relied upon his earlier discussion of Plaintiff's "unremarkable" exam with Nurse Jordan a day before the opinion. (*Id.*; R. at 24 (citing R. at 1796)). So too did the ALJ effectively incorporate these "unremarkable" findings into his next point that Plaintiff's condition was "largely stable."

10

(R. at 25 (citing R. at 1796)).  Even if the ALJ hadn't made this earlier discussion, his mention of Plaintiff's "limited treatment" still provides the Undersigned with sufficient reference to Nurse Jordan's treatment notes.  (R. at 25 (citing R. at 1796)).  Although brief, the ALJ conducted a sufficient supportability analysis.  *See, e.g.*, *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (finding that although the ALJ "might have explained at even greater length why she did not accord Dr. Bell's opinion controlling weight," it was enough that she "addressed the factors the regulation required her to consider, and she provided good reasons at each step").

Plaintiff nevertheless argues that the ALJ failed to "discuss the objective medical evidence underlying the opinions as required." (Doc. 8 at 10 (citing R. at 24–25)).  She claims that the ALJ did not evaluate "what Jordan said she based her opinion on" and instead "compared [the opinion] to the record evidence as a whole." (*Id.*).  This is not the case.  As previously discussed, the ALJ noted that Nurse Jordan found Plaintiff couldn't perform "even a substantially reduced range of sedentary work" and that her opinion was based upon Plaintiff's "heart failure, asthma with fatigue, shortness of breath, and swelling of the legs." (R. at 24 (citing R. at 1784)).  The ALJ then determined that the alleged ailments were unsupported by Nurse Jordan's other records, incorporating his earlier discussion. (*Id.* (citing R. at 1793, 1796)).  Essentially, Plaintiff argues that because the ALJ did not cabin his supportability analysis into one section, that the ALJ did not perform a supportability analysis at all.  (*See* Doc. 8 at 10–15).

Plaintiff's characterization of the ALJ's requirements under the regulations is too narrow.  The ALJ is not required to package his analysis of the factors into a single section. *See Perkins*, 2021 WL 3722772, at *7.  Rather, the ALJ's analysis may be found throughout his opinion, which the Undersigned reviews in its entirety.  *Id.* at *7–8 (holding the ALJ gave sufficient detail for his supportability analysis "by discussing the record throughout his opinion," including a comparison

11

of the nurse practitioner's two opinions). Upon such a review, the Undersigned finds the ALJ's opinion contains sufficient analysis of supportability. Accordingly, Plaintiff's assigned error is without merit.

## IV. CONCLUSION

The Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

Date: October 16, 2025                          /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE

**PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).